UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAVOY OF NEWBURGH, INC.,
RUDOLPH LAMARR, SALVATORE
CUCORULLO AND QUINCY MAGWOOD,

**04 CIV. 1405**

                    Plaintiffs,

vs.                                                    **COMPLAINT**

CITY OF NEWBURGH, CITY OF NEWBURGH
LOCAL DEVELOPMENT CORPORATION, CITY
OF NEWBURGH INDUSTRIAL DEVELOPMENT
AGENCY, NICHOLAS VALENTINE and STEPHEN
ROCKAFELLOW, SUED IN THEIR INDIVIDUAL
CAPACITIES,

**BRIEANT**

                    Defendants.

-------------------------------------------------------------------x

By and through their attorney, Michael H. Sussman, plaintiffs complain

of defendants as follows:

PARTIES

    1.  Plaintiff, Savoy of Newburgh, Inc. [hereinafter "Savoy"] is a domestic

corporation existing under and by virtue of the laws of the State of New York,

with its principal office in the City of Newburgh, within this judicial district.

    2.  At all relevant times, plaintiff Rudolph Lamarr, an adult resident of

Orange County, has been a principal of Savoy.

    3.  At all relevant times, plaintiff Salvatore Cucorullo, an adult resident

of Orange County, has been a principal of Savoy.

4. At all relevant times, plaintiff Quincy Magwood, an adult resident of Orange County, has been a principal of Savoy.

5. Defendant City of Newburgh [hereinafter "the City"] is a municipal corporation organized pursuant to the laws of the State of New York. It may sue and be sued and operates within this judicial district.

6. Defendant the City of Newburgh Local Development Corporation [hereinafter "LDC"] is a not-for-profit corporation organized pursuant to section 1411 of the New York State Not-for-Profit Corporation law. It may sue and be sued and conducts business within this judicial district

7. Defendant the City of Newburgh Industrial Development Agency [hereinafter the "IDA"] is a public benefit corporation organized and functioning pursuant to Title I, Article 18-a of the General Municipal Law of the State of New York. It may sue and be sued and conducts business within this judicial district.

8. At all relevant times, defendants Nicholas Valentine and Stephen Rockafellow served on the City of Newburgh Council and were members of the Boards of Directors of the LCD and the IDA. Both reside in the City of Newburgh, within this judicial district. Both are sued in their individual capacities

-2-

for intentional and unconstitutional actions taken under color of state law.

## II. **JURISDICTION**

9. As this Complaint alleges that defendants violated the federal constitutional rights of the plaintiffs, this Honorable Court has jurisdiction pursuant to 28 U.S.C. secs. 1331, 1343 (3) & (4), 42 U.S.C. secs. 1983 and 1988.

## III. **FACTUAL AVERMENTS**

10. In November 2000, Andrew Marino, a member of the Democratic Party, was elected Mayor of the City of Newburgh.

11. In January 2001, Mayor Marino commenced service as Mayor of the City of Newburgh.

12. In January 2001, defendants Valentine and Rockafellow, both Republicans, served as members of the City Council for the City of Newburgh and the Boards of Directors of both the LDC and IDA.

13. Defendants Valentine and Rockafellow both knew that plaintiff Lamarr was a principal campaign strategist for Mayor Marino and a close political advisor to the Mayor.

14. In or about the summer 2001, plaintiff Lamarr formed plaintiff Savoy of Newburgh, Inc. with plaintiffs CUCORULLO and MAGWOOD.

-3-

15.  Individual plaintiffs formed plaintiff Savoy of Newburgh, Inc. to re-develop an old, vacant department store on lower Broadway into a first rate entertainment center, a fully lawful purpose.

16.  In or about June 17, 2002, the LDC adopted a resolution permitting its Executive Director to provide either a loan or a loan guarantee in the sum of $380,000 in community development block grant funds to plaintiff, Savoy.

17.  Defendant Rockafellow opposed this resolution and defendant Valentine abstained.

18.  On July 15, 2002, certain Republican Party allies of defendants Valentine and Rockafellow, namely Dae Vitale and Barbara Smith, read a prepared statement to the members of the Newburgh City Council accusing the Mayor of unethical conduct when he supported the Savoy loan.

19.  During these same comments, these women accused the LDC of not having a Board of Directors and claimed that the directors of the IDA and LDC were political cronies of Mayor Marino's.

20.  In their further comments, these women thanked defendants Valentine and Rockafellow "for their guardianship of their constituents".

21.  In further comments, another opponent of Mayor Marino's, Emily Metaxis, stated that she understood that Mayor Marino has 'a relationship

-4-

with two of the partners in the savoy deal" and inquired whether the Council should request an opinion of the Corporation Council as "to whether he should recuse himself from all discussions or voting on that."

22.  On July 15, at the City Council meeting, defendants Rockafellow and Valentine issued and distributed to members of the media and others a position statement which evidenced their politically-based opposition to the Savoy project.

23.  Specifically, in this position paper, these defendants accused Mayor Marino of "replac[ing] many of the experienced and conscientious IDA Board members with personal friends of his immediately upon gaining a majority of the city council."

24.  In this position paper, these individual defendants also made certain blatantly false statements about plaintiff Lamarr, seeking to link him to the theft of $100,000 and certain failed projects for which he bore no responsibility.  The public bodies of which they were part provided Lamarr no name-clearing hearing after the utterance of such defamatory comments by these individual defendants.

25.  In this position paper, these defendants claim that the LDC vote to approve the loan/loan guarantee for Savoy "was rushed through because the Savoy Partners [Rudy Lamarr, John Frontera] are personal friends of Lester Spellman, Mayor Marino and the Democratic members of the City Council."

26. In this position paper, these defendants falsely claimed that plaintiff Lamarr "was instrumental" in bringing Lester Spellman to Newburgh to take the IDA Director's position."

27. Defendant Valentine claimed that his opposition to the Savoy project stemmed from the involvement in the same of plaintiff Cucorullo's wife who had recently plead guilty to a felony for embezzling funds in another Orange County municipality.

28. Yet, Mr. Valentine abstained from voting on the loan/loan guarantee in June 2002 precisely because he knew that Cucorullo was involved in the project and, at that time, he knew about the conviction and did not inform the other members of the LDC Board.

29. In August 2002, responding to public concern, the IDA voted to provide Savoy a loan of $380,000, with $130,000 already provided, under certain new terms and conditions.

30. At the time of this vote, the IDA had other loans in default and outstanding and made limited effort to collect these loans.

31. The outstanding loans referenced to para. 30 were provided on behalf of companies and individuals which were not associated with Mayor Marino.

32. Indeed, in prior years, when they effectively controlled the IDA Board

-6-

of Directors, defendants Valentine and Rockafellow orchestrated loans to their political supporters and friends, regardless of past criminal records.

33.  The terms and conditions set forth by defendant City, LDC and IDA after August 26, 2002 were inconsistent with prior terms and conditions for like loans.

34.  Plaintiffs ultimately rejected these terms and conditions as unreasonable.

35.  By March 10, 2003, defendants Valentine and Rockafellow were in a majority position on the IDA Board of Directors.

36.  On that date, at individual defendants' urging and with their support, the IDA Board passed a resolution rescinding its support of the Savoy project and directing its Interim Administrative to demand payment of $130,000 from Savoy.

37.  Similar efforts have not been made to collect outstanding loans from political allies of these individual defendants.

38.  Defendants applied different, disadvantageous terms and conditions to the loan/loan guarantee to Savoy than it did grantees who were not politically associated with Mayor Marino.

39.  Defendants so acted to punish Lamarr and those acting in partnership and concert with him for their political beliefs and acts.

-7-

40.  By dint of the defendants' refusal to adhere to the terms of the initial loan/loan guarantee, plaintiffs' effort to obtain and close on bank financing for the renovation of the Kreisel Building failed.

41.  By dint of their failure to obtain such bank financing, plaintiffs have been disabled from proceeding with their project, Savoy has been left without the capacity to complete this project and individual plaintiffs have been deprived of the expected and projected revenue flow which a completed entertainment center would have created.

42.  The actions of individual defendants were intended to punish Lamarr and those associated with him for their associational choices, a course of conduct long since declared to be unconstitutional.

IV.  **CAUSES OF ACTION**

43.  Plaintiffs re-allege paras. 1-42 as if fully set forth herein.

44.  By retaliating against plaintiffs due to their protected political and associational choices, defendants have violated the First Amendment to the United States Constitution, as made actionable against them pursuant to 42 U.S.C. sec. 1983.

45.  By making highly defamatory comments against plaintiff Lamarr in the context of taking adverse state action, i.e., the termination of the loan guarantee,

defendants Rockafellow and Valentine deprived him of his liberty and reputation interests without due process of law, as made actionable against them pursuant to 42 U.S.C. sec. 1983.

## V. **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray that this Honorable Court:

a) accept jurisdiction over this matter;

b) empanel a jury to hear and decide all issues within its province;

c) award plaintiffs compensatory damages in the sum of $3,000,000 on the first cause of action [para. 44];

d) award plaintiffs punitive damages against individual defendants in the sum of $500,000 each to each plaintiff on the first cause of action  [para. 44];

e) award plaintiff Lamarr $500,000 in compensatory damages on his second cause of action [para. 45];

f) award plaintiff Lamarr $750,000 in punitive damages on his second cause of action against both individual defendants;

g) award plaintiffs' counsel the reasonable fees and costs associated with the prosecution of this matter pursuant to 42 U.S.C. sec. 1988 and

h) enter any other award it deems just, equitable and in the interests of justice.

-9-

Respectfully submitted,

Michael H. Sussman (3497)

Counsel for Plaintiffs

Law Offices of Michael H. Sussman
PO Box 1005
Goshen, NY 10924

Dated: 18 February 2004