UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SAVOY OF NEWBURGH, INC., RUDOLPH
LAMARR, SALVATORE CUCORULLO and
QUINCY MAGWOOD,

                       04 Civ. 1405 (CLB)

                  Plaintiffs,

                       *Memorandum and Order*

        - against -

CITY OF NEWBURGH, CITY OF NEWBURGH
LOCAL DEVELOPMENT CORPORATION,
CITY OF NEWBURGH INDUSTRIAL
DEVELOPMENT AGENCY, NICHOLAS
VALENTINE and STEPHEN ROCKAFELLOW,
sued in their individual capacities,

                  Defendants.
------------------------------------------------------------x
Brieant, J.

     Before this Court for decision is Defendants' motion for summary judgment (Doc. 34) filed on March 24, 2006. Opposition papers were filed on April 17, 2006, and reply papers were filed on April 21, 2006, and the motion was fully submitted for decision on May 5, 2006. Plaintiffs sue under 42 U.S.C. §1983, alleging violations of their constitutional rights as protected by the First and Fourteenth Amendments to the U.S. Constitution and Defamation.

     The following facts are undisputed or assumed for purposes of the motion. In April of 2001, the individual Plaintiffs formed a corporation, Savoy of Newburgh, Inc., ("Savoy"), for the purpose of renovating a large vacant retail furniture store at 121-123 Broadway in Newburgh, New York (or the "City") to be operated as a nightclub. They approached the City's Local Development Corporation ("LDC") for financing of their nightclub project, seeking either a

1

bridge loan or a loan guaranty. In January of 2002, the Plaintiffs submitted a "business plan" to Newburgh's Industrial Development Agency ("IDA"), which the IDA evaluated. On June 10, 2002, after months of discussing the proposal with Lester Spellman, IDA Administrator, and the IDA staff, Patrice Cucorullo (Plaintiff Cucorullo's wife) presented the Savoy project at an IDA meeting; no action was taken on the proposal at that time.

Around the same time, Salvatore and Patrice Cucorullo met with Defendant Valentine (a Republican City Council member). Councilman Valentine allegedly told the Cucorullos that, due to LaMarr's political association with Mayor Marino, Lester Spellman, and the Democratic party members of the City Council, he would never support a project that included Plaintiff LaMarr. Appealing to their 45-year long relationship, Cucorullo (the record is unclear as to whether is was Salvatore or Patrice) then asked Valentine to visit the building, to see the work being done to rehabilitate it, and to reconsider his position. Valentine declined to do so.

Plaintiffs contend, Defendants' deny, and the Court assumes for the motion, that the following occurred: At the June 10, 2002 IDA meeting, the agency voted 5-1 to support either gap financing or a loan guaranty for Savoy. Valentine abstained from the vote, though he expressed opposition for retaliatory, political reasons, and because plaintiff Cucorullo's wife Patrice had recently pleaded guilty to a felony for embezzling funds in another Orange County municipality, and defendant Rockafellow voted "no."

As of June 17, 2002, IDA Administrator Spellman arranged a bank loan for Savoy

2

through Hudson United Bank ("HUB" or the "Bank").  In exchange for the City establishing a CD worth $380,000 with the Bank as collateral, HUB was to provide a direct loan to Savoy.  On June 18, 2002, the IDA's attorney, Stewart Glenn, forwarded to Plaintiffs the resolution approving IDA support in the form of either a loan or a loan guaranty to HUB.

Defendants contend that after the June 10, 2002 funding resolution presentation, an amended (and not the original) resolution was accepted by the LDC one week later.  This second resolution differed from the original one:  The original resolution spoke of the LDC providing "financing" in the amount of $380,000, whereas the amended resolution spoke simply of "support" for the project, which was limited to "executing a guaranty of a loan by Hudson United Bank to Savoy in the amount of $380,000," if certain contingencies were met.  These contingencies included Savoy's closing title on the purchase of the premises it intended to use as a nightclub, the LDC's receipt of a lien against the property and other financing conditions.  None of these contingencies were satisfied.  Nonetheless on June 21, 2002, Spellman had $380,000 of the City's IDA funds transferred to Savoy's checking account at Fleet Bank.  This transfer was unauthorized.

Plaintiffs contend that by the end of June 2002, one of Valentine's and Rockafellow's political allies, Emily Metaxes, somehow obtained Savoy's bank records showing that there had been a large IDA transfer of money into Savoy's account.  Rockafellow then called the New York State Police and the New York State Attorney General, claiming that Spellman and Mayor Marino had committed a crime by transferring the IDA funds inappropriately.  No criminal

prosecution eventuated. Plaintiffs contend these actions were also retaliatory, as punishment for Plaintiff LaMarr's political associations.

*The July 15, 2002 "Position Statement" and other Allegedly Defamatory Statements:*

On July 15, 2002, at a City Council meeting, Rockafellow and Valentine presented a joint "position statement" which claimed that LaMarr was the Chief Financial Officer of Savoy, that he had been associated with the Hudson Valley Freedom Theater when $100,000 of its funds went missing, that he had received City funds to rehabilitate housing units which were never renovated, and that he oversaw the Newburgh Community Action Committee when that agency lost the "school lunch" and Head Start programs. Plaintiffs contend that the position paper falsely portrayed LaMarr as a thief who had failed or defaulted in various municipal-related endeavors.

Plaintiffs contend that at the June 17, 2002 IDA meeting, Rockafellow stated that LaMarr was the boyfriend of former Mayor Audrey Carey (as to imply that LaMarr's various positions within local government were obtained through favoritism), that LaMarr was a crook, and that Rockafellow would never lend any City funds to him.

*The Returning of a Portion of the Funds:*

On August 9, 2002, Newburgh's Finance Manager wrote to the Plaintiffs and demanded immediate repayment of the money because its "disbursement was made without the proper authorization" of Newburgh's LDC. On August 22, 2002, the Plaintiffs returned $250,000 to the

City of the $380,000 they had received. The rest had been spent on the project. They then entered into renewed negotiations with the City to borrow $380,000. On August 26, 2002, the Plaintiffs entered into a preliminary loan agreement with Newburgh's IDA. In this preliminary loan agreement, the plaintiffs acknowledged that they had already received and spent $130,000 of Newburgh's money. Defendants contend, and Plaintiffs deny, that each individual Plaintiff also promised that he would give the IDA a mortgage on his personal residence as partial security for the $380,000 loan from the IDA. Prior to closing, the Plaintiffs were to execute a superseding loan agreement with the IDA embodying these and other terms.

In mid-November of 2002, the IDA sent the Plaintiffs a commitment letter which tracked the general provisions of the preliminary loan agreement. The Plaintiffs claim that this commitment letter materially changed the terms of the agreement reached in August 2002 by requiring a mortgage against the personal residences of the individual plaintiffs and by requiring the plaintiffs to pay the IDA interest on the $130,000 already advanced at the prime rate of interest plus 1%. The Plaintiffs claim they would not agree to these terms. By March of 2003, the (now Republican majority) IDA board rescinded its loan offer and ordered its Administrative Director to take action to recover the $130,000 previously delivered to the Plaintiffs and not returned.

On April 17, 2006, in the related state court matter, *City of Newburgh, et al v. Savoy of Newburgh, et al*, Orange County Supreme Court, 8617/2003, the Hon. Elaine Slobod, A.J.S.C., granted summary judgment to the City. The judgment requires the Plaintiffs return all money

5

they received from the City in July of 2002.

Plaintiffs ask for a jury trial and seek compensatory and punitive damages, reasonable fees and costs associated with the prosecution of this matter, and any other award the Court deems just, equitable, and in the interests of justice.

*The State Court Decision and Order of April 17, 2006:*

By Decision and Order dated April 17, 2006, Justice Elaine Slobod granted the City of Newburgh, the LDC, and the IDA's motion to enter judgment in the principal sum of $130,000.00, with interest from December 12, 2003, and costs. In so holding, Justice Slobod determined that the now-Plaintiffs:

> ... signed an agreement, dated August 26, 2002, whereby Defendants acknowledged receipt of $130,000 and agreed that upon receipt of the full loan proceeds, the individual defendants would each give a mortgage on their personal residences to secure the loan . They also agreed at that time they would sign a 'long form' agreement which was to supersede the one they had signed. The whole amount of the loan in the sum of $380,000, had been previously and mistakenly wire transferred to them; they had returned $250,000.00 on or about the same time that they executed the loan agreement. Apparently, subsequent to the signing of the agreement, the individual defendants balked at giving mortgages on their homes and the agreement was not consummated...Defendants attempt to argue, *inter alia*, that they were not bound by the August 26, 2002 agreement, which they characterize as a letter, since it was to be superseded, and that there was inadequate consideration for the agreement since the monies had already been paid. These contentions lack merit (*see Liberty National Bank v. Gross*, 201 A.D. 2d. 467 (1994); General Obligation Law § 5-1105)).

Defendants contend that this ruling bars Plaintiffs' claims here. This Court agrees.

Plaintiffs contend they were ultimately denied financing from the City for their project,

6

due to Plaintiff LaMarr's political associations, and not due to the project's lack of merit or their own failure or refusal to consummate the August 26, 2002 agreement. The State Supreme Court has already determined that Plaintiffs did not fulfill their obligations under the loan agreement, and that Plaintiffs must therefore return the balance of the funds paid to them without authority. This judgment precludes litigation in this Court to the effect that the agreement did not originally require plaintiffs to mortgage their homes, or that this extra condition was added later, without their consent and in furtherance of a retaliatory scheme.

The decision of Justice Slobod provides both claim and issue preclusion with respect to this lawsuit. It is entitled to full faith and credit in this Court by Statute 28 U.S.C. § 1738. See generally *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 95 (2d Cir. 2005). Defendants are entitled to summary judgment in their favor dismissing the civil rights claims.

*LaMarr's Defamation Claim:*

Plaintiff LaMarr contends that he was defamed; Defendants contend they are entitled to immunity. This Court agrees with Defendants and concludes that they are entitled to legislative immunity. As stated by Our Court of Appeals in *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d. Cir. 2003):

> Legislators are entitled to absolute immunity from civil liability for their legislative activities. This Circuit has previously held that absolute legislative immunity for Section 1983 actions extends to local legislators. The test for determining whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.

7

Here, Defendants were acting within their role as legislators when they openly opposed legislation in the City Council to lend City funds to Mr. LaMarr or to the corporation which he helped to form. The defamation claim is dismissed.

**Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 34) is granted. The Clerk shall file a final judgment.

X

X

X

X

SO ORDERED.

Dated: White Plains, New York
     May 24, 2006

                                                          Charles L. Brieant, U.S.D.J.